IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DISTRICT

| | | |
|---|---|---|
| MARYLAND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. _____ |
| v. | ) ) | |
| NEW GROWTH IN CHRIST CHRISTIAN CENTER, INC. D/B/A NEW GROWTH IN CHRIST SIDNEY POITIER MALONE, DENEICE ANDREWS and CARMELITA CARMELETOS DRAYTON and ROCHELLE MALONE | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** MARYLAND CASUALTY COMPANY (hereinafter referred to as "Maryland"), Plaintiff in the above-styled action, and hereby files this Complaint for Declaratory Judgment, showing this Honorable Court as follows:

## PARTIES, JURISDICTION AND VENUE

### 1.

This is an action for Declaratory Judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy which presently exist between Plaintiff Maryland and Defendants New Growth in Christ (hereinafter referred to as "NGIC"), Sidney Poitier Malone (hereinafter referred to as "Sidney Malone"), Deneice Andrews (hereinafter referred to

as "Andrews"), Carmelita Carmeletos Drayton (hereinafter referred to as "Drayton") and Rochelle Malone (hereinafter "Rochelle Malone").

2.

Maryland is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in the State of Illinois.

3.

Upon information and belief, Defendant NGIC is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business in the State of Tennessee and is subject to the jurisdiction of this Court.  Upon information and belief, Defendant NGIC may be served through its registered agent for service of process, Reverend Sidney Malone, 7550 E. Shelby Drive, Memphis, Tennessee 38125-3506.

4.

Upon information and belief, Defendant Sidney Malone is a resident of the State of Tennessee and is subject to the jurisdiction of this Court.

5.

Upon information and belief, Defendant Drayton is a resident of the State of Tennessee and is subject to the jurisdiction of this Court.

6.

Upon information and belief, Defendant Andrews is a resident of Tennessee and is subject to the jurisdiction of this Court.

7.

Upon information and belief, Defendant Rochelle Malone is a resident of the State of Tennessee and is subject to the jurisdiction of this Court. She has been named as a necessary party Defendant in this declaratory judgment action because she has a financial interest in the outcome and should be bound by the Court's declaration.

8.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum of the SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

9.

Venue in this action is proper pursuant to 28 U.S.C. § 1391.

## THE MARYLAND POLICY AND LIABILITY COVERAGES

10.

Maryland issued a Precision Portfolio Policy Number PPS 00267809, (hereinafter referred to as the "Policy") including commercial general liability and commercial umbrella liability coverage, to Defendant NGIC[1], with effective terms of coverage from October 21, 2006

---

[1] The Policy shows the named insured as New Growth in Christ. However, the corporate records show Defendant NGIC to be created under the laws of the State of Tennessee as New Growth in Christ Christian Center, Inc. Additionally, the Complaint in the Underlying Suit has named New Growth in Christ Christian Center, Inc. d/b/a New Growth in Christ. Upon information and belief, Plaintiff Maryland believes that each of the above names refers to the named insured, NGIC. For purposes of this Complaint, Plaintiff Maryland has named New Growth in Christ Christian Center, Inc. d/b/a New Growth in Christ as a Defendant, and by so doing, seeks to have this declaratory judgment action apply to any related entities of NGIC, whether the exact form of the corporate entity is correct or not.

until October 21, 2007, subject to the terms, conditions and exclusions contained in the Policy. (A certified copy of the Policy is attached hereto as Exhibit "A").

## 11.

The named insured on the Policy is New Growth in Christ.  The form of business on the Declarations page of the Policy is indicated as "church."

## 12.

The commercial general liability coverage part of Maryland's Policy maintains limits of liability of $1 million per occurrence, $1 million for personal and advertising injury and $2 million in the aggregate.   The commercial umbrella coverage part of Maryland's Policy maintains a limit of liability of $1 million per occurrence, $1 million for personal and advertising injury and $1 million in the aggregate.

## 13.

The Policy contains the following commercial general liability insuring agreement (Coverage A):

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.   **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim and "suit" that may result.  But:

(1)     The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments for settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period. . . .

* * *

## 14.

The commercial general liability coverage part of the Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease."

## 15.

The commercial general liability coverage part of the Policy further defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

16.

Certain exclusions are provided under Coverage A of the commercial general liability coverage part of the Policy.  The pertinent exclusions are as follows:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2.    Exclusions**

This insurance does not apply to:

**a.        Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**e.        Employer's Liability**

"Bodily injury" to:

(1)    An "employee of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1)    Whether the insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

* * *

**p.      Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

## 17.

The commercial general liability coverage part of the Policy also contains the following insuring agreement (Coverage B):

**SECTION I - COVERAGES**
**COVERAGE B. PERSONAL AND ADVERTISING INJURY  LIABILITY**

**1.      Insuring Agreement**

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1)      The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      (2)      Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

b. This insurance applies to "personal and advertising injury" caused by an offense ***arising out of your business*** but only if the offense was committed in the "coverage territory" during the policy period.

(Emphasis added).

## 18.

"Personal and advertising injury" is defined by the commercial general liability coverage part of the Policy as:

injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person's or organization's goods, products, or services;

e. Oral or written publication, in any manner, of materials that violates a person's right of privacy;

\* \* \*

## 19.

Certain exclusions are provided under Coverage B of the commercial general liability coverage part of the Policy.  The pertinent exclusions are as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY  LIABILITY**

**2.      Exclusions**

This insurance does not apply to:

a.      Personal and advertising injury:

        (1)     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

        (2)     Arising out of the oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

* * *

        (3)     Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

* * *

20.

Maryland's general liability coverage part also contains an Employment-Related Practices Exclusion endorsement (Form CG 21 47 07 98), which applies to both Coverage A and Coverage B and provides as follows:

A.      The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

        (1)     A person arising out of any:

                (a)     Refusal to employ that person;

                (b)     Termination of that person's employment; or

                (c)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2)     The spouse, child brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity; and

(2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B.      The following is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1)     A person arising out of any:

(a)     Refusal to employ that person;

(b)     Termination of that person's employment; or

(c)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2)     The spouse, child brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity; and

(2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

21.

The commercial general liability coverage part of the Policy contains the following provision:

## SECTION II – WHO IS AN INSURED

1.      If you are designated in the declarations as:

* * *

d.      An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

2.      Each of the following is also an insured:

a.      Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture, or limited liability company)or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" is an insured for:

(1)     "Bodily injury" or "personal and advertising injury":

(a)     To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b)     To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a)above;

(c)     For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b)above; or

(d)    Arising out of his or her providing or failing to provide professional health care services.

## 22.

"Executive Officer" is defined by the commercial general liability coverage part of the Policy as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document."

## 23.

The commercial general liability coverage part of the Policy also explains that the term "employee" includes a "leased worker" but not a "temporary worker."  "Leased worker" is defined as, "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business." A "temporary worker" is "a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term work load conditions."

## 24.

The commercial general liability coverage part of Maryland's Policy contains an endorsement entitled Church Extensions (Form 9S5064) provides, in pertinent part:

VIII.    The following is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM, **SECTION II - WHO IS AN INSURED**:

6.    With respect to **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE**, and **COVERAGE B - PERSONAL AND ADVERTISING INJURY**, the following are additional insureds:

   a.  Any of your "church members", but only with respect to their liability for your activities or activities they perform on your behalf.

   b.  Any:

      (1) Trustee, official, or member or your governing boards; or

      (2) Members of the clergy,

     but only with respect to their duties as such.

* * *

25.

The Church Extensions endorsement defines "Church members" to mean "a person you have recognized and conferred upon the rights and responsibilities as a member of your congregation, and their minor children."

26.

As part of the Policy issued to NGIC, commercial umbrella liability coverage is also afforded, subject to the terms, conditions and exclusions of the Policy, in the amount of $1 million per occurrence, $1 million for personal and advertising injury and $1 million in the aggregate and has effective terms of October 21, 2006 to October 21, 2007.  The Declarations page of the commercial umbrella liability coverage part of the Policy also indicates that NGIC has no retained limit with this coverage.  Maryland's commercial general liability coverage under the Policy is listed in the Schedule of Underlying Insurance.

27.

The commercial umbrella liability coverage part of Maryland's Policy provides, in pertinent part:

**SECTION 1.  INSURING AGREEMENTS**

1.01   **Coverage**

A) We will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages for:

1) "Bodily injury" or "property damage" occurring during the POLICY PERIOD stated on the DECLARATIONS PAGE and caused by an "occurrence";

2) "Personal and advertising injury" caused by an offense ***arising out of your business*** but only if the offense was committed during the POLICY PERIOD.[2]

B) No other obligation or liability to pay sums or perform any act or service is covered unless explicitly provided for under Item 1.02, Defense, Settlement and Supplementary Payments.

(Emphasis added).

28.

The commercial umbrella liability coverage part of the Policy provides the following pertinent definitions:

**SECTION 5.  DEFINITIONS**

5.03   **Bodily Injury**

"Bodily injury" means "bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease."

---

[2]  As amended by the Umbrella Amendatory Endorsement (Form 985013 Ed. 09-01) attached to the umbrella liability coverage portion of Maryland's Policy.

\* \* \*

5.05  **Employee**

"Employee" includes a "leased worker".  "Employee" does not include a temporary worker.

If the definition of "employee" has been amended by an endorsement to a policy listed in the SCHEDULE OF UNDERLYING INSURANCE, that definition supersedes the definition of "employee" in this policy.[3]

\* \* \*

5.06  **Executive Officer**

"Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

\* \* \*

5.12  **Occurrence**

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

## 29.

The Umbrella Amendatory Endorsement (Form 985013 Ed. 09-01) attached to the commercial umbrella liability coverage part of the Policy modifies the definition of "personal and advertising injury" as follows:

5.13   **Personal and Advertising Injury**

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

A)      False arrest, detention or imprisonment;

---

[3] As amended by the Umbrella Amendatory Endorsement (Form 985013 Ed. 09-01) attached to the umbrella coverage portion of Maryland's Policy.

B)    Malicious prosecution;

C)    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

D)    Publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

E)    Publication, in any manner, of material that violates a person's right of privacy;

\* \* \*

30.

The commercial umbrella liability coverage part of Maryland's Policy also provides the following exclusions:

**SECTION 2.  EXCLUSIONS**

This insurance does not apply to:

2.01    **Personal and Advertising Injury**[4]

A) "Personal and Advertising injury":

1)    Committed by, at the direction or with the consent or acquiescence of, the insured with the intention or expectation to inflict "personal and advertising injury";

2)    Arising our of publication of material, if done by or at the direction of the insured with knowledge of its falsity;

\* \* \*

2.06    **Discrimination, Humiliation**[5]

"Bodily injury" or "personal and advertising injury" arising out of discrimination or humiliation:

---

[4] As amended by the Umbrella Amendatory Endorsement (Form 985013 Ed. 09-01) attached to the umbrella liability coverage portion of Maryland's Policy.
[5] As amended by the Umbrella Amendatory Endorsement (Form 985013 Ed. 09-01) attached to the umbrella liability coverage portion of Maryland's Policy.

A)    That is directly or indirectly related to the employment or prospective employment by the insured of any person or persons; or

B)    That is based on race, creed, color, sex, age or national origin.

\* \* \*

2.08   **Employers Liability**

A)  1)  a)   "Bodily injury" to any "employee" of the insured arising out of and in the course of his or her employment by the insured for which the insured may be held liable as an employer or in any other capacity;

b)   Any obligation of the insured to indemnify or contribute with another because of damages for "bodily injury" to an "employee" arising out of and in the course of his or her employment by the insured; or

c)   "Bodily injury" to the spouse, child parent, brother or sister of an "employee" of the insured as a consequence of "bodily injury" to such "employee" arising our of and in the course of his or her employment by the insured.

\* \* \*

2.09   **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended form the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force in protecting persons or property.

2.10   **Fellow Employee Injury**

Any "employee" as an insured with respect to "bodily injury" or "personal injury":

A)    To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

B)    To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph A) above;

C)      For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs A) and B) above; or

D)      Arising out of his or her providing or failing to provide professional health care services.

* * *

31.

The commercial umbrella liability coverage part of Maryland's Policy also contains an Employment-Related Practices Exclusion endorsement (Form 983104 Ed. 9-00) which modifies the insurance provided under the commercial umbrella liability coverage part of Maryland's Policy as follows:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" to:

A)      A person arising out of any:

1)  Refusal to employ that person;

2)  Termination of that person's employment;

3)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

B)      The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury", "personal injury", or "advertising injury" to that person at whom any of the employment-related practices described in Paragraphs 1), 2), or 3) above is directed.

This exclusion applies:

A)      Whether the insured may be liable as an employer or in any other capacity; and

B)      To any obligation to share damages with or repay someone else who must pay damages because of the injury.

32.

The commercial umbrella liability coverage part of Maryland's Policy further provides, in pertinent part:

**SECTION 3.  WHO IS AN INSURED**

3.01   If you are designated on the DECLARATIONS PAGE as:

    A) An individual, you and your spouse are an insured, but only with respect to the conduct of a business of which you are the sole owner.

    B) A partnership or joint venture, your are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    C) An organization other than a partnership or joint venture, your are an insured.  Your "executive officers" and directors are also insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

3.02   Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or interest which is greater than 50%, will qualify as a NAMED INSURED if there is no other similar insurance available to that organization.  However, this coverage part does not apply to:

    A) "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    B) "Personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

3.03   Each of the following is also an insured:

    A) Any person or organization for which you have agreed in a written contract to include as an insured, however:

        1) Only in  connection with liability arising out of the operation of your business;

        2) Only to the extent that coverage is afforded to that person or organization by "underlying insurance"; and

3) Only up to the extent of the limits of liability required by such contract, not to exceed the applicable LIMITS OF INSURANCE of this coverage part.

B) Any other person or organization that is included as an insured or additional insured under "underlying insurance" is an insured but only to the extent that coverage is afforded to that person or organization by the "underlying insurance".

C) Any person or organization while acting on your behalf as a real estate manager.

D) Your "employees", while acting within the scope of their duties as your "employees", except in connection with the ownership, maintenance, operation, use, "loading or unloading" of an "auto', other than one owned by, loaned to, or hired for use by you.

E) Anyone is an insured while using, with your permission, any "auto" owned, hired or borrowed by you except:

1) Someone engaged in the business of selling, servicing, repairing, parking or storing "autos" unless you own or operate that business.

2) The owner of an "auto" you hire or borrow including one of your "employees" or a member of the "employees" household.

F) Any of your subsidiary companies or any company over which you exercise control and actively manage, but only to the extent that coverage is afforded to the subsidiary or managed company by "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a NAMED INSURED on the DECLARATIONS PAGE.

## UNDERLYING ACTION

## 33.

On or about March 20, 2008, Rochelle Malone filed a lawsuit against New Growth in Christ Christian Center, Inc., Sidney Malone, Andrews and Drayton in the United States District Court for the Northern District of Georgia, Atlanta Division, bearing Civil Action No. 1:08-CV-

1122-WSD (hereinafter referred to as the "Underlying Suit").  (A true and accurate copy of the Complaint, with attached Exhibits, in the Underlying Suit is attached hereto as Exhibit "B").

## 34.

Sidney Malone is alleged to be the Pastor and Chief Executive Officer of NGIC.

## 35.

The Complaint in the Underlying Suit alleges that Sidney Malone, Andrews and Drayton "engaged in a diabolical scheme to admit [Rochelle Malone] in a mental institution on an inpatient status."

## 36.

The Complaint alleges that in June, 2006, Sidney Malone told Rochelle Malone, his wife at the time, that if she "failed to 'flow' with [Sidney Malone] and listen to [him] by June 2007; the Lord gave [him] permission to divorce [Rochelle Malone]."

## 37.

On or about March 13, 2007, Sidney Malone contacted Peachford Behavioral Health System of Atlanta in Atlanta, Georgia ("Peachford") and spoke with assessment counselor Dana Mosley ("Mosley") concerning treatment for Rochelle Malone.  The Complaint alleges that on that date, through a series of telephone calls, Sidney Malone made an appointment with Mosley to admit Rochelle Malone into Peachford's treatment program.

## 38.

It is further alleged that Drayton was present for all or part of these conversations between Sidney Malone and Mosley and was represented to Mosley as Rochelle Malone's sister.

39.

The Complaint alleges that Sidney Malone represented to Rochelle Malone that a facility was located in Atlanta, Georgia where she could participate in a three-day outpatient program to assist with depression caused by marital discord.  Sidney Malone also allegedly told Defendant Rochelle Malone that participating in this program was a prerequisite to their continued marriage.

40.

On or about March 20, 2007, Sidney Malone, Rochelle Malone, Andrews and Drayton traveled from Memphis, Tennessee to the Peachford facility in Atlanta, Georgia.

41.

Once there, a level of care assessment was conducted by Mosley.  The level of care assessment was allegedly based, at least in part, on the information provided by Sidney Malone, Andrews and Drayton.

42.

It is further alleged that Andrews and Drayton falsely stated to Mosley that they were the biological sisters of Rochelle Malone.

43.

The Complaint alleges that Andrews is an "NGIC Executive Administrator/Minister" and Drayton is an "NGIC Board Member/Member/Attorney."  (See Complaint at ¶ 18).

44.

During the level of care assessment, it is alleged that Sidney Malone, Andrews and Drayton made "false and misleading statements" to Mosley regarding Rochelle Malone and her biological relatives.

45.

Specifically, the Complaint alleges Sidney Malone, Andrews and Drayton "wrongfully and basically published numerous false and misleading statements about [Rochelle Malone]." The alleged assertions are as follows:

a.    The assertion that Rochelle Malone had "threatened suicide and cut her wrists in a past attempt";

b.    The assertion that Rochelle Malone was "bipolar and that there was a family substance abuse and bipolar [sic]";

c.    The assertion that Rochelle Malone "acted out in church the previous Sunday and she was paranoid about being edged out of the ministry they started together";

d.    The assertion that Rochelle Malone made "one of her sisters cry, went to the bathroom, came back, and did not remember what happened";

e.    The assertion that Rochelle Malone was "verbally assaultive toward one of her sister [sic]";

f.    The assertion that Rochelle Malone was "physically abusive and had been so for quite some time";

g.    The assertion that Rochelle Malone "her brothers and uncles were substance abusers and her father suffered from depression";

h. The assertion that Rochelle Malone's "mother and two sisters were bipolar";

i. The assertion that Rochelle Malone was "bipolar";

j. The assertion that Rochelle Malone was "delusional and paranoid all the time about helping him [Sidney Malone] start the ministry and about his [Sidney Malone's] cheating";

k. The assertion that Rochelle Malone "lashes out verbally and physically toward [Sidney Malone]";

l. The assertion that Rochelle Malone gets "disoriented, delusional, blacks out frequently, acted out at church, has extreme anger outbursts, impulsive spending, crying spells, threaten [sic] suicide and has cut her wrists";

m. The assertion that Rochelle Malone "threatened suicide two months ago";

n. The assertion that Andrews and Drayton are Rochelle Malone's biological sisters;

o. The assertion that Rochelle Malone "suffered from severe violent rapid mood changes, impulsiveness, extreme emotional agitation, anger outbursts and was physically abusive towards [Sidney Malone]";

p. The assertion that Rochelle Malone had "personality changes for the passed [sic] four to five years";

q. The assertion that Rochelle Malone "suffered from post-partum depression".

(See Complaint at ¶¶ 27-31, 63).

46.

The Complaint further alleges that as a result of the allegedly false statements, Rochelle Malone was subjected to "the embarrassment and humiliation of full body strip search, immediately medicated and institutionalized." (See Complaint at ¶ 32).

47.

Rochelle Malone alleges she was admitted to the inpatient psychiatric facility of Peachford where she was administered four medications; namely, Depakote, Risperidal, Zoloft and Cognetin.

48.

Rochelle Malone further alleges that she suffered an allergic reaction to one or all of the medications causing sickness, fainting and a rash on her body. (See Complaint at ¶¶ 39-41).

49.

The Complaint alleges that the conduct of Sidney Malone, Andrews and Drayton was done "intentionally, wrongfully, maliciously, wantonly and with an entire want of care sufficient to raise a presumption of conscious indifference to the consequences that [Rochelle Malone] would be misdiagnosed and wrongfully admitted to a mental institution under false pretenses." (See Complaint at ¶ 33).

50.

Rochelle Malone was admitted to the inpatient unit from March 20, 2007 through March 31, 2007. She was then transferred to the partial hospitalization program from April 1, 2007 to April 12, 2003. She was then transferred to an intensive outpatient program from April 12, 2007

to April 13, 2007.  (See Affidavit of Valrie Honablue, M.D., attached as Exhibit "A" to the Complaint of the Underlying Suit).

## 51.

Rochelle Malone further alleges that, prior to her institutionalization, she was "NGIC first lady, co-founder, officer, board member and minister of the church."  (See Complaint at ¶ 46).

## 52.

Following her release from Peachford, Rochelle Malone discovered that she had been removed from her position(s) at NGIC and NGIC had discontinued all compensation and/or financial support.  (See Complaint at ¶ 46).

## 53.

Further, Rochelle Malone alleges that Sidney Malone told her that she could not return to "her children, Tennessee, NGIC, or to the marital residence."  (See Complaint at ¶ 46).

## 54.

Rochelle Malone further alleges that Sidney Malone, Andrews and Drayton have "continuously wrongfully declared to NGIC members, religious community and the public that [Rochelle Malone] is mentally ill."  (See Complaint at ¶ 49).

## 55.

With respect to NGIC, Rochelle Malone alleges NGIC Board members and management staff "exercised lackadaisical control over the publication of erroneous information about [Rochelle Malone] to its employees, members and the general public."  (See Complaint at ¶ 72).

56.

Further, Rochelle Malone alleges that "NGIC Board Members, Officers and representatives were aware of its Pastor's and Executive Administrator's in appropriate [sic] conduct, but supported and condoned the inappropriate conduct and actively participated in the removal of [Rochelle Malone] from the state of Tennessee, NGIC, her children, her home and her family." (See Complaint at ¶ 60).

57.

Based on the foregoing allegations, Rochelle Malone asserted the following causes of action in the Underlying Suit:

| | |
|---|---|
| Count I | Defamation and Defamation Per Se: False assertion that Rochelle Malone is mentally ill. |
| Count II | Defamation and Defamation Per Se: Discrete Untruths |
| Count III | Fraud |
| Count IV | Intentional Infliction of Emotion Distress |
| Count V | Tortious Interference with Business Relationship (asserted against Sidney Malone, Andrews and Drayton only) |
| Count VI | Conspiracy (asserted against Sidney Malone, Andrews and Drayton only) |

58.

With respect to Counts I through IV of the Complaint in the Underlying Suit, Rochelle Malone alleges that NGIC is vicariously liable under the theories of "*respondeat superior*, agency, or both." (See Complaint at ¶¶ 82-85).

59.

Rochelle Malone alleges she suffered "severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing financial injury, severe emotional distress and other injury" as a result of the alleged defamatory statements made by Sidney Malone, Andrews and Drayton.  (<u>See</u> Complaint at ¶ 80).

60.

Rochelle Malone also seeks punitive damages based on the alleged intentional, wanton and willful conduct of Sidney Malone, Andrews and Drayton.

61.

On May 20, 2008, Maryland issued a reservation of rights letter to Defendant NGIC advising that it would provide NGIC, Malone, Andrews and Drayton with a defense, subject to a strict reservation of rights.  (A true and correct copy of Maryland's reservation of rights letter is attached hereto as Exhibit "C").

62.

Under this reservation of rights, Maryland is currently providing Defendants NGIC, Malone, Andrews and Drayton with a defense in the Underlying Suit.  In providing this defense, Maryland has reserved its rights to later withdraw its defense and/or disclaim coverage and indemnification for all or part of any judgment which may be obtained against Defendants NGIC, Malone, Andrews or Drayton in the Underlying Suit.

63.

On October 23, 2008, the Underlying Suit was transferred to the United States District Court for the Western District of Tennessee bearing the Civil Action No. 2:08-cv-02723-STA.  It is Maryland's understanding that the Defendants in that Underlying Suit have filed a motion to dismiss for lack of diversity jurisdiction.

64.

Rochelle Malone has filed separate motions to file an Amended Complaint and to add a party defendant, Linda Malone, in the Underlying Suit, which remain pending at the time of filing this Complaint.

**DECLARATORY JUDGMENT**

65.

Maryland asserts that the Policy does not provide, and expressly excludes, coverage for the facts and allegations upon which the Underlying Suit against Defendants NGIC, Malone, Andrews and Drayton is based, and therefore, Maryland has no duty to defend or indemnify Defendants NGIC, Malone, Andrews and Drayton for the claims asserted against them in the Underlying Suit.

66.

Specifically, the alleged conduct of Defendants Sidney Malone, Andrews and Drayton did not occur within the scope of their duties, obligations and/or employment with Defendant NGIC, and therefore, the individual Defendants do not qualify as "insureds" under SECTION II - Who Is An Insured of the commercial general liability coverage part and under Section 3. Who Is An Insured of commercial umbrella liability coverage part of Maryland's Policy.

67.

Additionally, the alleged conduct of Defendants Sidney Malone, Andrews and Drayton did not occur within the scope of their duties, obligations and/or employment with Defendant NGIC, and therefore, the individual Defendants do not qualify as "insureds" under the Church Extensions endorsement in the commercial general liability part of Maryland's policy.

68.

The Policy does not afford coverage under the commercial general liability coverage part or commercial umbrella liability coverage part to Defendants NGIC, Sidney Malone, Andrews and Drayton, to the extent the allegations in the Complaint in the Underlying Suit do not establish "bodily injury" or "property damage" as defined therein.

69.

The Policy does not afford coverage under the commercial general liability coverage part or commercial umbrella liability coverage part to Defendants NGIC, Sidney Malone, Andrews and Drayton, as the allegations in the Complaint in the Underlying Suit do not establish an "occurrence" as defined therein.

70.

Even if the allegations in the Complaint sufficiently allege "bodily injury" or "property damage" caused by an "occurrence" under Coverage A of the commercial general liability coverage and the commercial umbrella liability coverage, which Maryland disputes, the respective exclusions in each coverage part apply to the allegations set forth in the Complaint in the Underlying Suit.    Therefore, Maryland contends no coverage is afforded under the

commercial general liability coverage part or the commercial umbrella liability coverage part of Maryland's Policy.  Specifically, coverage is excluded under the Expected or Intended Injury exclusion and the exclusion concerning liability for "personal and advertising injury."

## 71.

In the same way, Maryland contends that the allegations in the Complaint do not establish a "personal and advertising injury" of the type contemplated by Coverage B of the commercial general liability coverage part or the commercial umbrella liability coverage part of Maryland's Policy, and no coverage is afforded to Defendants NGIC, Sidney Poitier, Andrews and Drayton under either coverage part.  Specifically, any alleged "personal and advertising injury" was not "caused by an offense arising out of [NGIC's] business."  Moreover, to the extent certain causes of action and allegations do not constitute a "personal and advertising injury" offense as defined by the policy, no coverage is provided.

## 72.

Even if the allegations in the Complaint sufficiently allege a "personal and advertising injury" offense which was caused by an offense arising out of NGIC's business, under Coverage B of the commercial general liability coverage part or the commercial umbrella liability coverage part, which Maryland disputes, the respective exclusions in each coverage part apply to the allegations set forth in the Complaint in the Underlying Suit.  Therefore, no coverage is afforded under the commercial general liability coverage part or the commercial liability coverage part of Maryland's Policy.  Specifically, in performing the alleged conduct, NGIC, Sidney Malone, Andrews and Drayton knowingly violated the rights of Rochelle Malone to inflict "personal and advertising injury" and/or defamed Rochelle Malone with the knowledge of the falsity of the

alleged statements, all of which constitutes conduct excluded by the policy.  Moreover, to the extent the allegations assert that the Defendants have breach an oral or written contract, no coverage is afforded under Maryland's Policy.

## 73.

Additionally, since Defendant Rochelle Malone was an employee of Defendant NGIC at the time of the alleged incidents, Maryland contends the respective Employer's Liability exclusions apply to preclude coverage under the commercial general liability coverage part and commercial umbrella liability coverage part of Maryland's Policy to Defendants NGIC, Sidney Malone, Andrews and Drayton.

## 74.

Additionally, since Defendant Rochelle Malone was an employee of Defendant NGIC at the time of the alleged incidents, the respective Employment-Related Practices exclusion applies to preclude coverage under the commercial general liability coverage part and commercial umbrella liability coverage part of Maryland's Policy to Defendants NGIC, Sidney Malone, Andrews and Drayton.

## 75.

Even if the allegations in the Complaint sufficiently allege "bodily injury" pr a "personal and advertising injury" offense which was caused by an offense arising out of NGIC's business, under Coverage B of the commercial general liability coverage part or the commercial umbrella liability coverage part, which Maryland disputes, the Discrimination, Humiliation and/or the Fellow Employee exclusions in the commercial umbrella liability coverage part of Maryland's

Policy apply to the allegations set forth in the Complaint in the Underlying Suit, and no coverage is afforded to Defendants NGIC, Sidney Malone, Andrews and Drayton.

## 76.

Maryland asserts that a genuine dispute exists regarding the coverage issues mentioned above and that declaratory judgment is necessary to clarify these uncertain issues.

## 77.

If Maryland's contentions are correct, then Maryland would be under no duty to defend NGIC, Sidney Malone, Andrews or Drayton with respect to the Underlying Suit, and Maryland would be under no obligation to pay any judgment in connection with the above-described acts. However, should Maryland withdraw its defense in the underlying lawsuit without a declaration from this Court, it could risk a claim for breach of contract.

## 78.

Therefore, Maryland is placed in jeopardy by the continued expense of the defense of Defendants NGIC, Malone, Andrews and Drayton in the Underlying Suit until Maryland receives the declaration of rights and duties it seeks.

Wherefore, Plaintiff Maryland prays:

A.   For Declaratory Judgment declaring the rights and liabilities to the parties to the insurance contract which is attached hereto;

B.   For Declaratory Judgment that Plaintiff has no duty to defend Defendants NGIC, Malone, Andrews or Drayton in the Underlying Suit;

C.      For Declaratory Judgment that Plaintiff Maryland has no duty to indemnify Defendants NGIC, Sidney Malone, Andrews or Drayton in the Underlying Suit;

D.      For costs in this action;

E.      For such other and further relief as this Honorable Court may deem proper under the circumstances;

F.      For process and summons issued to each of the Defendants herein and that service on the Defendants be had as required by law.

This 22nd day of January, 2009.

Respectfully submitted,

LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC

BY:     */s/ Molly Glover*  _____
        MOLLY GLOVER, #16113
        NICOLE M. GRIDA, #25416
        ***Counsel for Maryland Casualty Company***
        254 Court Avenue, Second Floor
        Memphis, Tennessee  38103
        (901) 527-0214

1946813v.1